CARLSMITH BALL LLP

WILLIAM M. HARSTAD      8942
KATHERINE A. GARSON    5748
DEREK B. SIMON              10612
1001 Bishop Street, Suite 2100
Honolulu, HI  96813
Tel No. 808.523.2500
Fax No. 808.523.0842
*wharstad@carlsmith.com*
*kgarson@carlsmith.com*
*dsimon@carlsmith.com*

AT&T SERVICES, INC. LEGAL DEPT.

RAYMOND P. BOLAÑOS (*Pro Hac Vice* Pending)
430 Bush Street, 6th Floor
San Francisco, CA 94108
Tel No. 415.268.9491
Fax No. 415.543.0418
*rb2659@att.com*

Attorneys for Plaintiff
NEW CINGULAR WIRELESS PCS, LLC
d/b/a AT&T MOBILITY, a Delaware Limited
Liability Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY, a Delaware Limited Liability Company, | CIVIL NO. _____ |
| | **COMPLAINT; SUMMONS** |
| Plaintiff, | |
| vs. | |
| WINDWARD PLANNING | [*caption continued*] |

COMMISSION, COUNTY OF
HAWAIʻI; COUNTY OF HAWAIʻI;
THOMAS RAFFIPIY, in his official
capacity as Chairman of the
Windward Planning Commission;
COUNTY OF HAWAIʻI PLANNING
DEPARTMENT,

> Defendants.

# COMPLAINT

## PARTIES & NATURE OF THE ACTION

1.  Plaintiff NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T

MOBILITY ("**AT&T**") is a limited liability company organized and existing under

the laws of Delaware and registered to do business in the State of Hawaiʻi. AT&T

provides personal wireless services to its customers throughout the State of

Hawaiʻi, including in the County of Hawaiʻi.

2.  Defendant WINDWARD PLANNING COMMISSION

("**Commission**") is an agency within the meaning of Haw. Rev. Stat. ("**HRS**") §

91-1, and a Planning Commission established pursuant to Titles 6 and 13 of the

Hawaiʻi Revised Statutes, and the Hawaiʻi County Charter (2018).

3.  Defendant COUNTY OF HAWAIʻI ("**County**") is a local

governmental entity organized under Hawaiʻi law.

4.  Defendant THOMAS RAFFIPIY, in his official capacity, is the

Chairman of the Commission.

5.     Defendant COUNTY OF HAWAIʻI PLANNING DEPARTMENT ("**Department**") is an agency within the meaning of HRS § 91-1 (collectively, the Commission, County, Thomas Raffipiy (in his official capacity), and the Department, are referred to as "**Defendants**").

6.     This action arises from the Commission's denial of a permit application submitted by AT&T for construction of a 105-foot tall monopine cellular antenna ("**Monopine**") and related equipment (together, with the Monopine, the "**Facility**"), to be located in Keaʻau, Puna, Hawaiʻi (the "**Application**").

7.     The Commission denied the Application for two stated reasons: (A) the "proposed tower site is materially detrimental to the public welfare," in that there are purportedly facilities within the fall zone of the proposed 105-foot tower, and (B) AT&T "failed to show [that it has] legal access to the property."

8.     The Application satisfied all criteria under the relevant state and local zoning codes and regulations. The Commission's denial of the Application violates federal law and should be reversed. Further, the Commission's denial of the Application was based on the misapplication of state and local law, and the factual findings and legal conclusions made by the Commission in its denial of the Application are unsupported and/or contradicted by the record, and the denial should be reversed on those grounds, as well.

## JURISDICTION AND VENUE

9.      The Court has federal question jurisdiction under 28 U.S.C. § 1331. This action arises under the laws of the United States, specifically the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332.

10.     The Court also has supplemental jurisdiction of the Fourth, Fifth, Sixth, and Seventh Claims for Relief, under 28 U.S.C. § 1367(a) for claims brought under Hawaiʻi law.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2), because Defendants reside in this district and AT&T's claims arise out of events or omissions occurring in this district.

## FACTUAL BACKGROUND

12.     The Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.,* as amended (the "**Act**") requires that State and local decisions denying requests to construct personal wireless service facilities be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B). The Act also prohibits local government regulation of the placement and construction of personal wireless service facilities that "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services." *Id.*

13.     The licenses authorizing AT&T to provide wireless service in the County of Hawaiʻi were issued by the Federal Communications Commission pursuant to the Act. The Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide and worldwide wire and radio communications service with adequate facilities at reasonable charges for the purposes of national defense [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

14.     To meet the policy goals that Congress has established and to provide personal wireless services to local businesses, public safety entities, and the general public, AT&T must consistently update its technology, facilities, and network to keep up with its customers' growing demand for mobile services, including mobile data service and wireless phone coverage. AT&T must, among other things, create and maintain a network of cell sites, each of which consists of antennas and related equipment designed to send and receive radio signals.

15.     AT&T's customers suffer a significant gap in coverage in personal wireless services in certain portions of the County of Hawaiʻi, particularly in the area of the proposed Facility.

16.     AT&T desires to fill this coverage gap and improve personal wireless service quality in the area of the proposed Facility. AT&T has determined the

geographic area within which it must install the subject Facility, to close this coverage gap.

17.     AT&T specifically identified a site located northeast of Makuʻu Drive-17th Avenue intersection in Hawaiian Paradise Park Subdivision, Keaʻau, Puna, Hawaiʻi (the "**Property**") upon which it could build the Facility, to address its significant coverage gap.

18.     The Commission violated section 332(c)(7)(B) of the Act, as well as local and state law, when it denied AT&T's Application to build the Facility on the Property.

19.     The location of the Facility at the Property was selected in part because of its minimal visual impact on the surrounding area. The Facility would include the 105-foot Monopine disguised as a pine tree to blend in with the surrounding conifer canopy and supporting equipment in a self-contained shelter.

20.     AT&T's Application was filed on November 5, 2019 and was accepted by the Department for processing on November 27, 2019.

21.     The proposed 105-foot tall Monopine includes an antenna array consisting of three (3) sectors with four (4) antennas per sector, along with associated electronics. The Monopine was proposed to be painted pine green and designed to blend with the surrounding character of the 20-acre Hawaiian Paradise Park rural subdivision where the Facility was proposed to be constructed.

22.     In addition to the tower and antennas, the 1,054-square foot (34' x 31') leased area was to be used for accessory ground facilities located within an enclosed prefabricated 8' x 16' walk-in cabinet shelter. The leased area was to be enclosed by a 6-foot high chain-link fence with landscaped buffer, green privacy slats, and a 10-foot wide locked access gate. Maintenance and repair activities were to be performed by a technician on a periodic basis, typically once a month within normal working hours.

23.     By memorandum dated December 6, 2019, with copies of the Application enclosed, the Department solicited comments on the Application to various County, State, and Federal agencies, as well as the Hawaiian Paradise Park Community Association ("**HOA**"). The agencies included were the County of Hawai'i Department of Public Works ("**DPW**") Engineering Division (Hilo), County of Hawai'i Real Property Tax Office, Hawai'i County Fire Department ("**HCFD**"), Hawai'i County Department of Environmental Management, Hawai'i County Police Department ("**HCPD**"), Hawai'i County Civil Defense Agency, DPW Building Division, State of Hawai'i Department of Land and Natural Resources' Land and Engineering Divisions, State of Hawai'i Department of Health, and the U.S. Fish and Wildlife Service.

24.     In December 2019 and January 2020, the Department received comments on the Application from the DPW Engineering Division, State

Department of Health, and U.S. Fish and Wildlife Service. The remainder of the agencies had no comment or did not respond.

25.     On January 29, 2020, Michael Yee, the County Planning Director, sent his background report on the Application to the Commission and recommended the Application be approved, finding that the Application met the criteria for approval set forth in Rule 7 of the Commission Rules, and in particular that granting the Application: (A) was consistent with the general purpose of the zoned district, the intent and purpose of the County Zoning Code, and the County General Plan; (B) will not be materially detrimental to the public welfare nor cause substantial adverse impact to the community's character or to surrounding properties; and (C) will not unreasonably burden public agencies to provide roads and streets, sewers, water, drainage, school improvements, police and fire protection and other related infrastructure.

26.     On February 6, 2020, the Commission held a hearing on the Application pursuant to Rule 7 of the Commission Rules. At the February 6, 2020 hearing, the Applicant presented oral testimony and answered questions from the Commission. The Commission also heard public testimony at the February 6, 2020 hearing in opposition to the Application. At the February 6, 2020 hearing, the Commission closed public testimony and made a motion to **approve** the Application. Three commissioners voted to approve the Application and only one

voted to deny. At the conclusion of the February 6, 2020 hearing, however, the Commission voted to continue the hearing to March 5, 2020.

27.     The Commission held the continued hearing on the Application on March 5, 2020. AT&T again presented oral testimony and answered questions from the Commission, and the Commission also heard further public testimony in opposition. At least 6 community members providing public testimony at the March 5, 2020 hearing discussed their concerns regarding alleged negative health effects presented by the Project, and the Project's supposed negative impact on property values in the area.

28.     At the conclusion of the March 5, 2020 hearing, the Commission moved and seconded that the Application be denied, for the stated reasons that: (A) a playground, parking lot, and basketball court were purportedly located within the "fall-radius" of the 105-foot Monopine; and (B) AT&T allegedly failed to show proper legal access to the subject property.

29.     On or about May 13, 2020, the Commission issued its PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, and DECISION AND ORDER FOR DENIAL OF USE PERMIT APPLICATION NO. 19-000082 (the "**Proposed Order**"), in which it restated the basis for its denial stated at the March 5, 2020 hearing, that: (A) a playground, parking lot, and basketball court were purportedly located within the "fall-radius" of the 105-foot Monopine; and (B) the

Applicant allegedly failed to show proper legal access to the subject property. The Commission erroneously found the Project was materially detrimental to public welfare because of the alleged and unfounded "falling risk of the tower," which the Commission erroneously believed, "could damage life and property, due to the proposed tower site's close proximity to a frequently used playground, parking lot, and basketball court on the property."

30.     The record is devoid of any evidence that the Monopine is at any risk of falling. AT&T's Application materials showed that the Monopine is designed to withstand winds of 105 mph and meets all the structural and safety requirements prescribed for such facilities. This fact was not included in the Commission's Proposed Order Findings of Fact or the Final Order (defined below), and the Commission ignored the safety and structural information in the record and assumed (without any evidence) that the Monopine was at risk of failure.

31.     The Department staff, in recommending that the Application be approved, determined that the proposed use would ***not*** be materially detrimental to the public welfare nor cause substantial, adverse impact to the community's character or to surrounding properties.

32.     Contrary to the Commission's conclusion, the playground, parking lot, and basketball backboards are located more than 105 feet away from the center of the 105-foot Monopine; only the eastern edge of the abandoned basketball court

lies within a 105-foot radius of the Monopine. AT&T's Application included photos that show the court is abandoned and lacking rims, thus making it extremely unlikely that any persons would be using the basketball facility, in any case. Moreover, the Commission did not cite to any regulation that required the existence of a designated fall zone or "fall radius."

33. AT&T's Application also showed the distance from the Monopine to the chain link fence to be approximately 135 feet. The playground sits beyond the chain link fence, further away from the Monopine.

34. There is also no evidence in the record to support the Commission's conclusion that AT&T does not have legal access to the subject property. The Commission erroneously found, without any factual basis, that AT&T "failed to show it had legal access to the property." This conclusion was contradicted by a signed Letter of Authorization from the President of the HOA, which was attached to AT&T's Application.

35. AT&T also has a signed License Agreement with the HOA, which was submitted to the Commission ahead of the June 4, 2020 hearing to adopt the Findings from the March 5, 2020 hearing. Also, at the March 5, 2020 hearing, Department staff confirmed that they timely provided a copy of the Application to the HOA for comments, but the HOA did not comment on, object to, or respond to the Application in any way.

36. The FirstNet network was authorized by Congress, developed through the U.S. Department of Commerce, and is being built through a public-private partnership between AT&T and local governments. The network gives first responders priority in emergency situations to send voice or text messages, images, video and location information in real-time, enables information-sharing across disciplines and jurisdictions, dramatically increases situational awareness, and supports faster, more effective responses to emergencies or disasters.

37. The Monopine, once built, will be part of the FirstNet network in Hawaiʻi, and will become part of the dedicated emergency first responder FirstNet network in times of emergency. Denial of the Application threatens the development of the interconnected AT&T communications sites as part of the FirstNet network.

38. HCFD submitted a letter in support of AT&T's Application, stating that:

> HCFD is a vested recipient of the build out FirstNet, a broadband network dedicated to public safety. The fact that Hawaiʻi is the first to roll [this] out speaks volumes to the readiness of AT&T to provide the service to Hawaiʻi Island. FirstNet allows our department priority and preemption while on FirstNet, thereby securing optimum emergency response by increasing optimum communication among our first responders.

HCFD's letter further stated that the tower "will only further strengthen the FirstNet broadband for all emergency services providers [and will] also strengthen

the general public's ability to communicate emergency needs. In the interest of increased safety to the members of my department, other public safety employees, and our communities, [we] ask for your support of" the Application.

39.     HCPD also submitted a letter in support of AT&T's Application, stating that:

> In concert with the County owned Land Mobile Radio (LMR) system, our Department and its officers depend upon cellular to do our jobs efficiently. In the event of poor LMR reception, cellular coverage may provide a vital means of communication which helps ensure officers safety, and in turn increase public safety.

HCPD further stated that the Facility was a "vital part of building this network for our community and will provide a more reliable network for our department, other emergency services, and the public."

40.     AT&T considered three alternative sites for the Facility, but those sites did not have available antenna space at the required height to satisfy FirstNet requirements.

41.     The Puna Community Development Plan ("**CDP**") was adopted by the Hawai'i County Council, Ordinance 08-116, on September 10, 2008. Action 3.4.3(e) in the Public Safety and Sanitation Services section of the CDP seeks to "[e]ncourage enhancement of cell phone service to expand coverage to more remote areas."

42.    On June 4, 2020, the Commission held a public hearing to consider the Proposed Order. The Commission thereafter adopted the Proposed Order as its final decision on the Application (the "**Final Order**").

43.    On or about June 14, 2020, the Commission served upon AT&T the certified copy of the Final Order.

## FIRST CLAIM FOR RELIEF
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) -- Substantial Evidence)
### (Injunctive Relief)

44.    AT&T incorporates the above allegations as if fully set forth herein.

45.    Under 47 U.S.C. § 332(c)(7)(B)(iii), "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

46.    Defendants violated § 332(c)(7)(B)(iii) because the denial of AT&T's Application is not supported by substantial evidence contained in a written record. The record before the Commission contained substantial evidence that AT&T complied with all requirements necessary to obtain the relevant approvals for installation of the proposed Facility at the Property. This evidence was not rebutted by any other substantial evidence contained in the record.

47.    The Commission's denial of AT&T's Application has caused and will continue to cause AT&T irreparable harm.

48.     The Act entitles AT&T to relief ordering Defendants to issue all permits and approvals required for AT&T's installation and operation of the Project at the Property.

**SECOND CLAIM FOR RELIEF**
**(Violation of 47 U.S.C. § 332(c)(7)(B)(i) -- Effective Prohibition of Service)**
**(Injunctive Relief)**

49.     AT&T incorporates the above allegations as if fully set forth herein.

50.     The Act prohibits local regulation of the placement, construction, or modification of personal wireless service facilities that "prohibit[s] or ha[s] the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

51.     The Commission's refusal to allow AT&T to place the Facility at the Property violates section 332(c)(7)(B)(i) of the Act because it has the effect of prohibiting the provision of personal wireless services.

52.     AT&T has a significant gap in reliable wireless coverage in the area surrounding the Property, including populated areas and traveled roads.

53.     AT&T's proposed Facility at the Property is the least intrusive means of remedying the significant gap in AT&T's personal wireless service coverage in the area. AT&T analyzed alternative sites in the area, and none were available or could be used to place wireless facilities in a manner that would be less intrusive. As a result, the Commission's denial of AT&T's Application has effectively

prohibited the provision of personal wireless services within the meaning of section 332(c)(7)(B)(i) of the Act.

54.    Defendants' failure to comply with the requirements of the Act and refusal to grant AT&T's Application has caused and will continue to cause AT&T irreparable harm.

55.    The Act entitles AT&T to relief ordering Defendants to issue all permits and approvals required for AT&T's installation and operation of the Facility at the Property.

**THIRD CLAIM FOR RELIEF**
**(Violation of 47 U.S.C. § 332 (c)(7)(b)(iv))**
**(Injunctive Relief)**

56.    AT&T incorporates the above allegations as if fully set forth herein.

57.    Concerns regarding radio frequency (RF) emissions from the Monopine cannot be a basis for the denial of a telecommunications use permit, and any decision based on such alleged fears or concerns must be reversed. 47 U.S. Code § 332 (c)(7)(b)(iv).

58.    The evidence in the record indicates that the Commission considered impermissible factors in making its ultimate decision to deny the Application. The Commission entertained extensive public testimony based on perceived adverse health effects from RF emissions, and then based its denial of the Application on a fall risk that did not exist, as well as the wholly false rationale that AT&T

allegedly did not have property rights for the proposed location of the Monopine.

59.    The Commission's purported rationales for the decision are unsupported by substantial, probative evidence in the record and are an effort to disguise the real rationale based on health concerns voiced by the Project's opponents. The Commission's decision to deny the Application was thus a violation of federal law and statutory procedure, and clearly erroneous in view of the reliable, probative, and substantial evidence in the record.

60.    Federal law entitles AT&T to relief ordering Defendants to issue all permits and approvals required for AT&T's installation and operation of the Facility at the Property.

### FOURTH CLAIM FOR RELIEF
**(Violation of Section 25-2-64 of the Hawai'i County Code)**
**(Deemed Approved – Injunctive Relief)**

61.    AT&T incorporates the above allegations as if fully set forth herein.

62.    Section 25-2-64 of the Hawai'i County Code ("**HCC**") provides as follows:

> (a)    Within ninety days after acceptance of a use permit application, the commission shall either deny or approve the application. The commission's decision shall be accompanied by a statement of factual findings supporting the decision, together with any conditions imposed upon a use permit approval.
>
> . . . .

> (c)      If the commission fails to render a decision within the prescribed period, the application shall be considered as being approved, provided that no written objection to the use permit is received by the commission.

63.      No written objection was received by the Commission within 90 days of the acceptance of the Application (which was accepted on November 27, 2019). The Commission did not act (to approve or deny) the Application until March 5, 2020, which is 99 days after the date of acceptance of the Application.

64.      HCC § 25-2-64 entitles AT&T to relief ordering Defendants to issue all permits and approvals required for AT&T's installation and operation of the Facility at the Property.

## FIFTH CLAIM FOR RELIEF
### (Violation of Section 46-89 of the Hawai'i Revised Statutes)
### (Deemed Approved – Injunctive Relief)

65.      Section 46-89 of the Hawai'i Revised Statutes states that "A county shall approve, approve with modification, or disapprove all applications for broadband-related permits within **sixty days of submission of a complete permit application** and full payment of any applicable fee. If, on the **sixty-first day,** an application is not approved, approved with modification, or disapproved by the county, the application shall be deemed approved by the county." For purposes of Section 46-89, "broadband-related permits" means "all county permits required to commence actions with respect to the installation, improvement, construction, or development of infrastructure relating to broadband service or broadband

technology, including the interconnection of telecommunications cables, cable installation [and] **tower construction**."

66.     January 27, 2020 was the 61st day following the County's acceptance of the Application. As of January 27, 2020, the County had not acted on AT&T's Application.

67.     The Monopine is an expansion of AT&T's communications network, to support the latest 4G LTE technology. LTE stands for "Long Term Evolution." LTE technology is the next step in increasing, *inter alia*, **broadband** speeds to meet the demands of uses and the variety of content accessed over mobile networks.

68.     HRS § 46-89 entitles AT&T to relief ordering Defendants to issue all permits and approvals required for AT&T's installation and operation of the Facility at the Property.

**SIXTH CLAIM FOR RELIEF**
**(HRS Section 91-14)**
**(Injunctive Relief)**

69.     AT&T incorporates the above allegations as if fully set forth herein.

70.     The Order prejudices AT&T's rights and should be reversed because it is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record (HRS § 91-14(g)(5)), and is arbitrary, capricious, and/or characterized by an abuse of discretion or a clearly unwarranted exercise of

discretion (HRS § 91-14(g)(6)).

71.    HCC §§ 25-5-72(b)(2) and 25-4-12(a) provide that telecommunication antennas and towers are permitted uses in an Agriculture district provided that a use permit is issued.

72.    HCC § 25-4-12(b)(l) sets forth the minimum setback and wind survivability requirements for permitted structures, providing that freestanding telecommunication antennas and towers must be set back a minimum of one foot for every five feet of antennae or tower height.

73.    HCC § 25-4-12(c) requires that the telecommunication tower, together with the initial antennae and equipment, must withstand winds of at least one hundred miles per hour.

74.    AT&T demonstrated in the Application that these requirements were met. The Department recommended approval of the Application based on its determination that the Application met all applicable code requirements.

75.    Rule 7-2 of the Commission Rules provides that each of the following three standards must be satisfied to grant a use permit:

　　　　a.    The granting of the proposed use shall be consistent with the general purpose of the zoning district, the intent and purpose of the Zoning Code, and the County General Plan;

　　　　b.    The granting of the proposed use shall not be materially

detrimental to the public welfare nor cause substantial, adverse impact to the community's character or to surrounding properties; and

c.      The granting of the proposed use shall not unreasonably burden public agencies to provide roads and streets, sewer, water, drainage, schools, police and fire protection and other related infrastructure.

76.    Without making a single finding of fact or conclusion of law determining that the Department's recommendation was incorrect, or unsupported by probative evidence in the record, the Commission erroneously determined that the Application should be denied.

77.    Contrary to the Department's recommendation that the Application met all standards and the use permit should be issued, the Commission found the Application would allegedly cause substantial adverse impacts to the community's character and to surrounding property due to the Facility's siting in proximity to existing structures, and an alleged fall risk.

78.    The Commission's conclusion regarding the alleged fall risk is contrary to substantial evidence in the record that the type of structure proposed in the Application is specifically designed **not** to fall. The conclusion is also contrary to the substantial evidence in the record that the Application met all criteria for a use permit as well as all HCC criteria, including meeting the minimum required setback and withstanding winds of at minimum one hundred miles per hour -

criteria that specifically addresses the purported falling concern raised by the Commission.

79.     The evidence in the record shows the Commission's ultimate reasons for denying the Application was crafted to fit a desired result and was therefore arbitrary, capricious, and characterized by abuse of discretion or clearly unwarranted exercise of discretion.

80.     State law entitles AT&T to relief ordering Defendants to issue all permits and approvals required for AT&T's installation and operation of the Project.

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory Judgment)**

81.     AT&T incorporates the above allegations as if fully set forth herein.

82.     An actual and ripe controversy exists between the parties arising from the denial of the Application. A judicial determination resolving that actual controversy is necessary and appropriate at this time.

83.     Due to the above actions, AT&T has suffered and will continue to suffer irreparable harm.

84.     Pursuant to 28 U.S.C. § 2201 *et seq.*, and applicable state law, AT&T is entitled to a declaration that the above actions by Defendants violated its rights under the above-referenced statutes.

## PRAYER FOR RELIEF

Based on the foregoing, AT&T respectfully prays as follows:

1.     That the Court find and declare that the Commission's denial of AT&T's Application violates federal and State law, and that the denial is unsupported by substantial evidence and is arbitrary and capricious;

2.     That the Court enter an injunction requiring:

a. That the Commission grant the Application; and

b. That Commission and/or the Defendants immediately grant all other authorizations necessary for the construction of the personal wireless service facility;

3.     For expedited review of the matters set forth in this Complaint;

4.     For an award of AT&T's costs; and

5.     For such other and further relief as the Court finds just and proper.

DATED:  Honolulu, Hawai'i, July 2, 2020.

/s/ *William M. Harstad*
WILLIAM M. HARSTAD
KATHERINE A. GARSON
DEREK B. SIMON
RAYMOND P. BOLAÑOS (*Pro Hac Vice* Pending)

Attorneys for Plaintiff
NEW CINGULAR WIRELESS PCS, LLC, d/b/a AT&T MOBILITY, a Delaware Limited Liability Company